Freeman, J.,
delivered the opinion of the court:
This bill was filed by complainant April 12, 1869, to set aside a conveyance of her interest in the land of her father’s estate, made by her and her then husband, C. C. Abernathy, the 29th of December, 1843, a period of about twenty-six years intervening between the execution of the deed and the commencement of this suit.
The grounds on which the relief is sought are fraud and undue influence in obtaining the contract with her husband, and in obtaining the signature and privy examination of the wife to the conveyance. The facts necessary to be noticed are, that the defendant, Hall, was the stepfather of complainant, having intermarried with her mother, Mrs. Wright, in 1840, and lived at the time of this transaction, on the dower with his said wife. About a year before Hall’s marriage with Mrs. Wright, complainant, then under age, had intermarried with one C. C. Abernathy, and was residing with her husband in Giles county, Tennessee. In January, 1842, the husband seems to have left his home in Giles, and gone to the house of defendant, and there made a contract with him by which he agreed to sell his and his wife’s interest in her father’s land, descended to her on his death. The terms of the trade were agreed on and a title bond executed by the husband, expressing on its face the consideration to have been seven hundred dollars. This bond recites the fact that the wife at that time was a minor, and could not, therefore, join in executing a valid conveyance for the estate, therefore the husband bound himself to Hall in the penalty of the bond, fourteen hundred dollars, to execute himself, and have his wife, whenever she shall arrive at lawful age, to execute a deed or deeds conveying him the title in fee simple to the lands sold. The lands were sold for, perhaps, $200 cash, or about that sum, balance on a credit, the last payment not falling due until the 25th of December, 1844. At the time of the execution of the deed, in 1843, complainant was of age, her privy exam *272 ination. was regularly taken, and the deed duly registered soon after its acknowledgment. Not long after this1, complainant became discovert,- and remained a widow for about four years, and then intermarried with a Mr. Hall, a nephew of defendant, who- died some years afterwards, the time not shown definitely, thus leaving her again unfettered by the marital relation, and free- to prosecute her rights. Notwithstanding this case has been argued with much zeal and ability, we do not feel that it is necessary to go- into an elaborate examination of the facts in order to its decision. We have examined the testimony carefully, and proceed to state our conclusions from it.
It is clear that if no- fraud or undue influence is made out to our satisfaction, the case fails, and the decree of the chancellor must be affirmed. On this question we are clear there is no satisfactory evidence of either the one or the other. The only fact in the record that raises any suspicion on this question is the assumed inadequacy o'f the price paid the husband for the land. The testimony is not very full on this question, the two witnesses on the part of complainant making the land worth, in their judgment, about $12 per acre, and about as many, perhaps more, on the part of the defendant, malting it about $6 per acre. In the partition afterwards made, 174 acres were assigned to Hall, as the vendee of Abernathy and wife, he paying $150 difference in value of shares to the other heirs. We need but say that after the great length of time That has elapsed, it would have to be a much stronger case than this of inadequacy to induce a court to set aside a solemn conveyance executed according to the forms of law, for this cause. The facts as .shown in this record, that a man capable abundantly of attending to and watching his own interest and that of his wife, selling land at a price deemed by him satisfactory, and acquiescing in it until his death and the other facts, that his wife, after bang discovert and free to assert her rights, acquiescing for four years, then marrying again *273 and again becoming free by the death of her husband, in only moderate circumstances, and she is evidently a shrewd wopian, yet lying idly by for twenty-six years before bringing suit, go very far to overbalance the estimate of a few witnesses who give an opinion tending to show that the price was, in fact, inadequate. It suffices to say that we do not see evidence of fraud either in the price or any other conduct shown in this record on the part of defendant, on which we ought to declare this conveyance void or set it aside, even if there were not other grounds on which the party might be precluded from relief.
As to the question of undue influence, or of advantage taken of a confidental relation amounting to fraud, we can see no evidence whatever in the record that any undue influence was possessed, and certainly none of its exercise in this case. It is tine, defendant had married the mother of .complainant, but before this, complainant had married Abernathy, and was living in another county. We can see nothing in the mere legal relation of stepfather upon which we could assume that an undue influence would be thus obtained over his married stepdaughter, living at a distance from him, and with whom, it would appear, he had'but little communication. In addition to this, she had a husband able, and no doubt willing, to take care of and look after her interest, and to whom she no doubt looked for advice, and who had both the obligations of his position and the incentive of interest to preserve his wife’s estate for tbeir mutual benefit.
It is urged, however, that the fact that the title bond -given, by which the husband bound himself to convey and to procure his wife to convey, on arriving at age, bound his hands so that he could not give his wife protection or afford her counsel when she came to part with her estate. We cannot see the force of this argument. The same objection would apply to all *274 cases where the husband sells the land acquired by the wife, and gives his bond to make a good title in the future, on payment of the purchase money. Yet we take it that it has never been held, nor could it be, that the deed executed by the ynfe, freely, voluntarily and understandingly, with no fraudulent device used to- procure her execution of it, nor coercion on the part of the husband, could be set aside simply because made in pursuance of a binding contract on his part to make such a conveyance. The fair meaning of this title bond is simply, that as the wife was under age, and her deed would then be subject to this defect in law, that when this disability was removed, then a valid deed should be executed. We cannot see that this presents a valid objection to the deed in this case.
We do not deem it necessary or proper, as we have said, to elaborately argue this case. It suffices to say that the great preponderance of the proof shows that the land was sold with the assent of the wife; that the husband had purchased land adjoining his home in.Giles county, Tennessee, which suited the parties, both husband and wife; that probably he had become somewhat involved by this purchase, and feared that a favorite negro girl received by his wife might have, to be sold in order to meet his debts; that the wife preferred -to sell her land in Rutherford and use the means in payment for the lands in Giles, and save her negro girl, and that, influenced by these motives, it might have been also somewhat by the motive, quite a proper one, to oblige the husband and conform to his views of what was best for their mutual interest, that in pursuance of these ánd like considerations, the sale was made and the assent of the wife fully given at the time. The only witness who militates against this view of the case is a brother of complainant, whose testimony has so many of the features of a swift witness, if not worse, that no court would be willing to give any weight to his testimony. In addition to this, he is contradicted directly in material points, both by other *275 witnesses and in cross-examination. His testimony is totally unreliable.
This view of tbe case is strongly corroborated by tbe lapse of time and other circumstances in the record. Lapse of time, as such, may not be pronounced an absolute bar to relief independent of the statute of limitations, .but then it does operate as a witness, and in a case’like this it is evidence of a most persuasive, if not conclusive, character against the claim set up by complainant. She has acquiesced in a conveyance for twenty-six years, which, if wrongfully obtained, she knew the facts as well as she ever did. She passed through four years of widowhood, then a series of years with a second husband, then again a period of freedom from restraint of marriage of perhaps sufficient length to make the bar of the statute of limitations, and yet is never known to complain for all this perod until 1869. This conduct is so entirely inconsistent with ■ the facts charged in her bill, that it would take the strongest and most satisfactory testimony to overturn the conclusion to be drawn from it. We do not find any such testimony in this record.
We need not notice other questions in the case that might be equally as conclusive on the rights of complainant, as we are perfectly satisfied with the correctness of the decree of the cancellor, and the same must be affirmed with costs.